Filed

L. C.    / 2007

RICHARD W. WICKING
CLERK, U. S.
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:

NISSAN NORTH AMERICA,
INC. ODOMETER LITIGATION

MDL DOCKET NO. ___

**07 - 3801 RMW**

## MEMORANDUM IN SUPPORT OF NISSAN NORTH AMERICA, INC.'S MOTION TO TRANSFER AND CONSOLIDATE FIVE ACTIONS FOR PRETRIAL PROCEEDINGS

Nissan North America, Inc. ("NNA") submits this memorandum in support of its motion to (1) transfer five putative nationwide class actions, currently pending before five different federal district courts, that share common factual allegations and assert violation of the same unique federal statute, and (2) consolidate those actions before a single court for pretrial proceedings under 28 U.S.C. §1407.[1] The convenience of the parties and witnesses, as well as the interests of just and efficient litigation, are best served if these class actions are litigated in a

---

[1] A Schedule of Actions is attached as Exhibit A to NNA's Motion to Transfer and Consolidate. Copies of the complaints in the referenced actions are filed as Exhibits B - F.

single forum. NNA respectfully submits that the U.S. District Court for the Middle District of Tennessee, the district in which its headquarters are located, offers the best choice of forum as it is where documents and witnesses related to this litigation in the United States are located, and is a centrally located venue with favorable docket conditions.[2]

### BACKGROUND

In April 2007, NNA filed a Motion to Transfer and Consolidate Four Actions (MDL #1855 - *In re Nissan North America, Inc. Odometer Litigation*) with this Panel arising from the same set of operative facts as the actions listed in Exhibit "A." In July 2007, just prior to the oral argument on MDL #1855, plaintiffs in three of the four constituent actions voluntarily dismissed their cases.[3] Accordingly, as the litigation was no longer multidistrict in nature, this Panel issued an Order on July 25, 2007 deeming NNA's motion moot and vacating the hearing on its motion.

On July 25, 2007, an action was filed in the United States District Court for the Northern District of California, and more recently in late November, three additional actions were filed in

---

[2] The Panel may recall that NNA's earlier motion to transfer and consolidate (MDL #1855) proposed the Eastern District of Michigan because NNA anticipated that relevant discovery would be primarily limited to design documents and issues for which a subsidiary based in Michigan had some responsibility. However, as explained in Section IIA below, preliminary written discovery on the pleaded claims as well as requested jurisdictional discovery in the *Womack* action have made it clear that a significant amount of the discovery sought relates to documents of NNA and NNA witnesses that would be found in Tennessee, where its corporate headquarters are located.

[3] The action that remained was the *Womack* action, pending in the Eastern District of Texas. The other actions were pending in Illinois, Kentucky, and Idaho. Certain counsel from the dismissed actions were added as counsel in the *Womack* action after these cases were dismissed.

District Courts in Pennsylvania, Michigan, and California.[4] Thus, five separate class actions are

again pending against NNA in five different district courts, each alleging that NNA violated the

Federal Odometer Act, 49 U.S.C. §§ 32701-32711. The cases are:

- *Rebecca Womack, et al. v. Nissan North America, Inc., et al.,* filed in the United States District Court, Eastern District of Texas, Marshall Division, on November 16, 2006, Case No. 2:06-cv-00479-DF;

- *Nkem Anadu, et al. v. Nissan North America, Inc., et al.*, filed in the United States District Court for the Northern District of California, on July 25, 2007, Case No. C-07-03801-RMW;

- *Michael D. Shaffer, et. al. v. Nissan North America, Inc.* filed in the United States District Court for the Eastern District of Pennsylvania, on November 14, 2007, Case No. 2:07-cv-04794-PBT;

- *Darryl Hidalgo v. Nissan North America, Inc., et al.* filed in the United States District Court for the Eastern District of Michigan, on November 27, 2007, Case No. 2:07-cv-15024-ADT; and

- *James Selth, et al. v. Nissan North America, Inc., et al.* filed in the United States District Court for the Central District of California on November 30, 2007, Case No. CV07-07841-SVW.

In addition to NNA, Nissan Motor Co., Ltd. (NML) has also been named as a defendant in each

action, except *Shaffer*. In the *Anadu* action, plaintiffs have named Nissan-Infiniti LT and Nissan

Acceptance Corporation d/b/a Infiniti Financial Services as additional defendants.

In all five lawsuits, the respective plaintiffs allege that (1) the odometers in their vehicles

inflate the mileage driven by a factor of no less than 2.0% under normal conditions,[5] and (2) the

---

[4] Given NNA's prior filing of MDL #1855, the circumstances under which it was deemed moot, and the recent recurrence of additional case filings, NNA asks that this matter be heard and decided on an expedited basis. NNA requests this matter be placed on the January 2008 argument calendar, if possible.

odometers over-register because NNA and/or NML purposefully designed the odometers to inflate mileage pursuant to a uniform, biased odometer performance standard.[6] The plaintiffs in each of the actions claim that NNA and/or NML violated the Federal Odometer Act, which authorizes private civil actions only where a defendant acts with intent to defraud.[7] Each action alleges that defendants have deprived the plaintiffs of the benefit of their bargain by shortening their warranty coverages and diminishing the resale value of their vehicles. Each case seeks to certify a nationwide class comprised of persons who bought or leased a Nissan and/or Infiniti automobile from various dates to the present. NNA denies each of these allegations, and anticipates that discovery will occur on each of them.

In the *Womack* action, NNA filed a Motion to Dismiss which was briefed and ruled upon. In addition, the Court conducted a scheduling conference in November 2007, and preliminary written discovery has commenced. NML filed a Motion to Dismiss for Lack of Jurisdiction and for Insufficient Service of Process in the *Womack* action. The Court issued an Order denying NML's motion without prejudice, and allowed plaintiff to proceed with limited jurisdictional discovery as it pertains to NML.

---

[5] *Womack* Compl. ¶ 12; *Anadu* Compl. ¶ 15; *Shaffer* Compl. ¶ 17; *Hidalgo* Compl. ¶ 13; *Selth* Compl. ¶ 12.

[6] *Womack* Compl. ¶¶ 12-13; *Anadu* Compl. ¶ 16; *Shaffer* Compl. ¶ 18; *Hidalgo* Compl. ¶ 21(a); *Selth* Compl. ¶ 13.

[7] Each action, except *Womack*, also includes a claim for Unjust Enrichment/Restitution. The *Anadu* and *Selth* actions also assert claims for violations of the California Business and Professions Code.

The *Anadu* action was filed in July 2007, but none of the named defendants have been served with the Summons and Complaint. It appears that the *Anadu* action may be dismissed for lack of prosecution.

The *Shaffer* action was filed on November 14, 2007, and NNA was served with the Summons and Complaint on November 30, 2007.

The *Hidalgo* action was filed on November 27, 2007. NNA was served with the Summons and Complaint on December 3, 2007. NML has not been served with the Summons and Complaint.

The *Selth* action was filed on November 30, 2007. NNA was served with the Summons and Complaint on December 5, 2007. NML has not been served with the Summons and Complaint..

## ARGUMENT

Consolidation of these five actions under section 1407 is needed for several reasons. Most importantly, these actions share common allegations relating to complex factual matters on which duplicative written discovery, document production, and deposition testimony will necessarily occur absent consolidation. Consolidating the pretrial proceedings under section 1407 will eliminate this duplication and serve the convenience of the parties and witnesses. In addition, consolidation will promote the just and efficient conduct of the litigation by (1) allowing a single judge to formulate a pretrial discovery plan to avoid the potential for conflicting discovery timelines, and (2) eliminating the possibility of conflicting pretrial rulings on a host of issues, including discovery, application of the Federal Odometer Act, and class

certification.

## I.    THE FIVE PUTATIVE CLASS ACTIONS SHOULD BE CONSOLIDATED AND TRANSFERRED TO A SINGLE VENUE UNDER 28 U.S.C. §1407.

Transfer and consolidation of two or more civil cases for coordinated pretrial proceedings

is proper where: (1) the cases "involve[] one or more common questions of fact;" (2) the

transfers will further "the convenience of the parties and witnesses;" and (3) the transfers "will

promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a). As explained

below, the *Womack, Anadu, Shaffer, Hidalgo,* and *Selth* cases unquestionably meet these criteria,

and warrant transfer and consolidation under section 1407.

### A.    The Actions Share Common Factual Allegations.

Each of the five lawsuits share factual allegations that make transfer and consolidation the

most efficient approach to managing this litigation. Each case alleges that odometers in Nissan

and/or Infiniti vehicles over-register mileage, this over-registration is due to the manner in which

the odometers are designed, the design results from a uniform odometer performance standard,

and the odometer design was used to intentionally defraud customers.

When transfer is sought pursuant to 28 U.S.C. § 1407(a), "common questions of fact" for

purposes of section 1407 exist when, as here, the actions plead the same factual allegations.[8] *See*

*In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, 229 F.Supp.2d

1377, 1378 (J.P.M.L. 2002) (explaining that common factual questions arise because all actions

---

[8]    Although the five actions here share factual allegations that warrant consolidation under Section 1407(a), this does not mean that any of them, or any of the putative class representatives, can satisfy the commonality, typicality, adequacy or predominance requirements of Fed R. Civ. P. 23. For consolidation it need only appear that the actions overlap in their factual assertions, whereas the requirements of Rule 23 are much more rigorous and difficult to establish.

focus on allegations regarding the design and placement of the car's fuel tanks); *In re Baldwin-United Corp. Litig.*, 581 F.Supp. 739, 740 (J.P.M.L. 1984) (ruling that common questions of fact exist when actions share the same core allegations).

As the Panel has recognized, these are the type of overlapping factual issues that arise in the product liability context and are particularly well-suited for consolidation under section 1407. *See, e.g., In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F.Supp.2d 1381, 1382 (J.P.M.L. 2003) (transfer ordered where all actions involved "allegations that the Dex-Cool engine coolant in certain GM vehicles caused significant damage to the vehicles and/or did not perform as warranted."); *In re St. Jude Med., Inc.,* 2001 U.S. Dist. LEXIS 5226, at *203 (J.P.M.L. Apr. 18, 2001) (transfer ordered where "[a]ll actions are brought as class actions . . . and arise from the same factual milieu, namely the manufacture and marketing of allegedly defective heart valve and replacement products"); *In re GMC Type III Door Latch Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 5075, at *1-*2 (J.P.M.L. Apr. 14, 1999) (transfer ordered where "the three actions in this litigation involve common questions of fact concerning allegations that the 'unmodified Type III door latches on certain GM vehicles are defective and prone to failure."). Although these actions are not product liability claims, the actions are quite similar in that they seek to impose liability based on the design and performance of components used in all Nissan and Infiniti vehicles, and will involve similar discovery related to vehicle design.

**B.    Centralization of These Actions Will Serve the Convenience of the Parties and Witnesses.**

A transfer of these cases to one venue for pretrial purposes would benefit all of the parties by making this litigation less costly and more convenient for all involved. As it stands, should

these lawsuits proceed independently, NNA must defend five lawsuits in districts within four different states. NNA will be subjected to numerous duplicative discovery demands, and will have to produce documents and witnesses under different discovery timelines. The burden on NNA of responding to discovery in five competing actions pending in five different districts would be tremendous. Consolidation will avoid these problems by enabling a single judge to formulate a pretrial discovery plan that will minimize witness inconvenience and overall expense. *See In re Cuisinart Food Processor Antitrust Litig.,* 506 F.Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with pretrial activities"); *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.,* 406 F.Supp. 540, 542 (J.P.M.L. 1975) (transfer "necessary in order to prevent duplication of discovery and eliminate possibility of conflicting pretrial rulings").

Centralization will also enable counsel to proceed more efficiently. *See, e.g., In re Baldwin-United Corp. Litig.*, 581 F.Supp. 739, 741 (J.P.M.L. 1984) ("prudent counsel will combine their forces and apportion the workload in order to streamline the efforts"). By limiting procedures such as the number of case management conferences, discovery plans, discovery disputes, summary judgment motions, and other pretrial matters, while also reducing travel expenses for all counsel, the five cases will be litigated more efficiently.

## C.    Centralization Will Promote the Just and Efficient Conduct of the Five Actions.

Finally, from the standpoint of judicial resources, consolidation makes eminent sense. Allowing a single judge to preside for pretrial purposes will conserve judicial resources that

might otherwise be spent addressing parallel or identical issues.

### 1.    Consolidation of These Actions Will Prevent Duplicative Discovery and the Potential for Conflicting Pre-Trial Rulings.

Because the five actions share core factual allegations and seek overlapping relief, centralization of these cases is necessary to prevent duplicative and potentially conflicting pretrial rulings. Where "an analysis of the complaints reveals a commonality of factual issues concerning the design, testing, manufacture, labeling and inspection" of allegedly defective products, transfer "is necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings." *In re Dalkon Shield*, 406 F.Supp. at 542; *see also In re Cooper Tire & Rubber Co. Tires Prods. Liab. Litig.*, 2001 U.S. Dist. LEXIS 2099 (J.P.M.L. Feb. 23, 2001), at *3 ("Motion practice and relevant discovery will overlap substantially in each action. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel and the judiciary."); *In re St. Jude Med., Inc., Silicone Heart Valves Prods. Liab. Litig.*, Docket No. 1396, 2001 U.S. Dist. LEXIS 5226, at *3 ("Centralization under Section 1407 is necessary in order to eliminate duplicate discovery, prevent inconsistent pretrial ruling (especially with respect to questions of privilege issues, confidentiality issues and class certification), and conserve the resources of the parties, their counsel and the judiciary.")

### 2.    Transfer Will Facilitate the Uniformity of Class Action Treatment.

The risk of potentially inconsistent pretrial rulings is an especially important factor given that these are putative class actions. The Panel has "consistently held that transfer of actions under section 1407 is appropriate, if not necessary, where the possibility of inconsistent class

determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F.Supp. 1271, 1273 (J.P.M.L. 1975). *See also In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Prods. Liab. Litig.*, 2000 U.S. Dist. LEXIS 15926 *6 (J.P.M.L. Oct. 24, 2000) ("Centralization under Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings (particularly with respect to overlapping class certification requests)"); *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F.Supp. 612, 613 (J.P.M.L. 1974) ("[T]he existence of and the need to eliminate [the possibility of inconsistent class determinations] presents a highly persuasive reason favoring transfer under Section 1407"); *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 493 (J.P.M.L. 1968) (finding transfer necessary to avoid "pretrial chaos in conflicting class action determinations"); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F.Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues."); *In re Mutual Fund Sales Anti-Trust Litig.*, 361 F.Supp. 638, 639-40 (J.P.M.L. 1973) ("[W]e have frequently held that the possibility for conflicting class determinations under [Fed. R. Civ. P. 23] is an important factor favoring transfer of all actions to a single district"). Without consolidation, NNA could face not only the possibility of inconsistent rulings on class certification, but also the possibility of competing overlapping certified classes proceeding to trial with inconsistent results. Thus, with five putative class actions, this factor strongly supports centralization.

### 3.    The Pending Actions Warrant Transfer Because They Involve Complex Issues of Fact.

The Panel has determined that, where the issues involved are sufficiently complex and consolidation will prevent the duplication of discovery and pretrial rulings, centralization is

proper, even when there are not a large number of overlapping cases pending. *See, e.g., In re Canon U.S.A., Inc. Digital Cameras Prods. Liab. Litig.*, 416 F.Supp.2d 1369, 1371 (J.P.M.L. 2006) (consolidating two actions); *In re Mountain States Tel. & Tel. Co. Employees Benefit Litig.*, 1989 U.S. Dist. LEXIS 13673 (J.P.M.L. Feb. 2, 1989) (consolidating two actions); *In re New Mexico Natural Gas Antitrust Litig.*, 482 F.Supp. 333, 336 (J.P.M.L. 1979) (consolidating three actions); *In re Cross-Florida Barge Canal Litig.*, 329 F.Supp. 543, 544 (J.P.M.L. 1971) (consolidating two actions); *In re First Nat'l Bank Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litig.,* 451 F.Supp. 995, 997 (J.P.M.L. 1978) (consolidating two actions).

The Panel has held that centralization under section 1407 is proper in cases, such as these, which involve broad discovery and raise intricate issues of engineering, vehicle design, and industry practice. *See, e.g., In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F.Supp. 969, 974 (J.P.M.L. 1979) (ordering transfer and consolidation of actions alleging injuries from disintegrating wheel rims); *In re Temporomandibular Joint (TMJ) Implants Litig.*, 844 F.Supp. 1553, 1554 (J.P.M.L. 1994) (ordering consolidation of actions alleging injuries from TMJ implants where factual issues involved, *inter alia*, whether defendants had adequately tested the implants and constituent materials and whether the implants constituent materials were prone to break down in recipients' bodies). Accordingly, these actions should be consolidated under section 1407.

## II.     THE PENDING ACTIONS SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE.

The Middle District of Tennessee is an appropriate venue for holding consolidated

pretrial proceedings of these actions.  Documents which will be produced by NNA in this

litigation reside in the Middle District of Tennessee, where NNA has its headquarters and

principal place of business.  Additionally, the Middle District of Tennessee offers a centrally

located, convenient venue to hold these consolidated proceedings, as well as docket conditions

well suited to handle this proposed MDL.

### A.     Documents Requested in Discovery Will be Located in Nashville, Tennessee.

NNA's headquarters and principal place of business are located in Nashville, Tennessee,

within the Middle District of Tennessee.  Based on discovery requests recently served in the

*Womack* action, it has become clear that many documents sought from NNA in this litigation will

be located in the Middle District of Tennessee.  For example, in the Joint Report on Rule 26(f)

Conference recently submitted in *Womack,* the plaintiff has indicated her intent to conduct

discovery concerning the size of the proposed class, consumer complaints, actual and projected

warranty costs and related financial matters.[9]  Documents concerning and witnesses

knowledgeable about these matters, as well as any advertising, marketing and distribution

information, to the extent relevant, are found in the Middle District of Tennessee.  Additionally,

---

[9]  The Joint Report on Rule 26(f) Conference is attached as Exhibit "G."  In addition, Plaintiff's Request for Production seeks similar types of documents found in the Middle District of Tennessee: RFP 1 (vehicles sold and customer complaints); RFP6 (repair, replacement and warranty costs); RFP 11 (warranty repairs and related policies after expiration of warranty terms); RFP 12 (information concerning vehicles leases); and RFP 13 (warranty costs, reserves and MSRP).  See Plaintiff's Requests for Admissions, Interrogatories and Requests for Production to NNA, attached as Exhibit "H."

jurisdictional discovery being sought in *Womack* seeks information from NNA concerning its corporate relationship with NML. Knowledgeable witnesses and documents concerning the corporate relationship are found in Nashville.

The Panel has consistently found that the location of the documents and witnesses weighs in favor of a venue where such are found. *See, e.g., In re McDonald's French Fries Litig.*, 444 F.Supp.2d 1354 (J.P.M.L. 2006) (selecting the Northern District of Illinois as the appropriate transferee forum in part because it was the likely source of relevant documents and witnesses because McDonald's headquarters was located there); *In re SFBC Intern. Securities & Derivative Litig.*, 435 F.Supp.2d 1355, 1356 (J.P.M.L. 2006) (transferee district was where relevant documents and witnesses may be found as defendant's principal offices were located there along with the offices of two of its subsidiaries); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 381 F.Supp.2d 1383, 1384 (J.P.M.L. 2005) (centralizing litigation in forum where many of defendant's documents and witnesses were located); *In re Reciprocal of America (ROA) Sales Practices Litig.*, 281 F.Supp.2d 1356, 1358 (J.P.M.L. 2003) (finding transferee court had "strongest nexus to this litigation" and noting that "witnesses and documents will likely be found there"); *In re Air Crash Disaster Near Santa Cruz Airport, Bombay, India, on January 1, 1978*, 463 F.Supp. 158, 159-60 (J.P.M.L. 1979) (choosing transferee court that had "most substantial connection to the common factual questions raised in this litigation" (including, in particular, proximity to the defendant manufacturer's headquarters, the site of the product's manufacture, and the defendant's documents and personnel); *In re Practice of Naturopathy Litig.*, 434 F.Supp. 1240, 1243 (J.P.M.L. 1977) (selecting transferee court in part because

"several relevant documents and witnesses [we]re located . . . nearby").

**B.    Judicial Statistics & Experience Support Consolidation in the Middle District of Tennessee.**

The Panel has also considered as relevant the number of MDL proceedings presently

pending in a proposed forum. *See In re Gator Corp. Software Trademark & Copyright Litig.*,

259 F.Supp.2d 1378, 1380 (J.P.M.L. 2003) (transferee district selected in part because it was not

currently overtaxed with other multidistrict dockets); *In re Pressure Sensitive Labelstock*

*Antitrust Litig.*, 290 F.Supp.2d 1374, 1376 (J.P.M.L. 2003) (transferee district selected because it

did not currently have any MDL dockets and had docket conditions allowing assignment to a

court with the present resources to devote to pretrial matters the action was likely to require).

The Middle District of Tennessee has a well-managed docket undertaxed by multidistrict

litigation, which would ensure just and expeditious resolution of the actions.  Indeed, in *In re*

*Aredia & Zometa Prods. Liab. Litig.*, 429 F.Supp.2d 1371, 1373 (J.P.M.L. 2006), in

consolidating the litigation in the Middle District of Tennessee, this Panel recognized that the

district was "currently handling few other multidistrict litigation dockets."  This fact continues to

hold true today as the Middle District of Tennessee, with 4 active judges, has 2 pending MDLs.

*See* Distribution of Pending MDL Dockets (as of November 6, 2007), attached hereto as Exhibit

"I."

**C.    The Middle District of Tennessee Provides a Centrally Located Venue for Pretrial Proceedings.**

With constituent actions pending from California to Pennsylvania, and from Michigan to

Texas, the Middle District of Tennessee provides a relatively central location for holding

14

consolidated pretrial proceedings in this proposed MDL. When constituent actions are

geographically dispersed, the Panel has often considered a centrally located district when

selecting a transferor venue. *See In re Ortho Evra Prods. Liab. Litig.*, 422 F.Supp.2d 1379

(J.P.M.L. 2006) (noting the Northern District of Ohio provided a "relatively central situs in

regard to the geographic dispersal of the constituent and potential tag-along actions"); *In re*

*Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F.Supp.2d 1371, 1372

(J.P.M.L. 2005) (noting the District of Minnesota was a geographically central district, with

available resources, and the location of defendant's facilities involved in developing the relevant

devices). The Middle District of Tennessee, which sits in Nashville, offers a centrally located,

convenient forum which is less than 10 miles away from the Nashville International Airport

(www.nashintl.com).

NNA recognizes there is no action pending in the Middle District of Tennessee, but this

does not prevent centralizing the litigation there. *See In re Cement and Concrete Antitrust Litig.*,

437 F.Supp. 750, 753 (J.P.M.L. 1977) ("in appropriate circumstances we would order transfer of

a group of actions to a district in which none of the constituent actions is pending").

Indeed, this Panel has many times transferred actions to districts in which no related

action was pending. *See, e.g. In re Volkswagen and Audi Warranty Extension Litig.*, 452

F.Supp.2d 1354, 1356 (J.P.M.L. 2006) (noting that the District of Massachusetts served the

convenience of the parties and witnesses and the litigation was transferred to a jurist with both

the time and experience to steer the litigation on a prudent course); *In re Iraq & Afghanistan*

*Detainees Litig.*, 374 F.Supp.2d 1356 (J.P.M.L. 2005) (transfer to District of Columbia was

**15**

appropriate for actions brought against Secretary of Defense and senior military officers in connection with their work for the United States); *In re UICI "Association Group" Ins. Litig.*, 305 F.Supp.2d 1360 (J.P.M.L. 2004) (transferee forum was unopposed choice of parties supporting centralization, location of moving party's headquarters, and therefore likely location of relevant documents and witnesses); *In re Southwestern Life Ins. Co. Sales Practices Litig.*, 268 F.Supp.2d 1377, 1378 (J.P.M.L. 2003) (Northern District of Texas was appropriate transferee forum because relevant documents and witnesses were located near Southwestern Life's Dallas home office and several plaintiffs resided in Texas); *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F.Supp. 1019, 1021 (J.P.M.L. 1978) ("since little discovery could be expected to occur in districts where the actions were pending," the panel selected the district where the plaintiffs principal place of business was located, where witnesses resided, and where official records were located in order to streamline discovery, as well as the possibility of coordination of a related state court action in the transferee district).

This litigation presents an appropriate circumstance for transfer and consolidation in a venue where no constituent action is pending. The venues selected by each of the putative class representatives, by contrast, do not have any special nexus to the factual underpinnings of this action, and except for the Eastern District of Michigan, will not be the site of significant discovery other than that directed at the class representatives.[10]

---

[10] The class representative in the action pending in the Eastern District of Michigan, Darryl Hidalgo, resides in Texas. *Hidalgo* Compl.¶ 1.

16

## CONCLUSION

For the foregoing reasons, the consolidation of these actions will further "the convenience of parties and witnesses and [will] promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a).  Therefore, NNA respectfully requests that the Panel enter an order transferring the actions listed in the Schedule of Actions to a single district for consolidated pretrial proceedings.  Further, NNA respectfully suggests that the Middle District of Tennessee is the appropriate transferee forum.

Dated: December 6, 2007

Respectfully submitted,

Jacqueline Jauregui, Esq.
James Nelson, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 S. Figueroa Street, 19th Floor
Los Angeles, California 90017
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

E. Paul Cauley, Jr., Esq.
SEDGWICK, DETERT, MORAN & ARNOLD LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: (469) 227-8200
Facsimile: (469) 227-8004
**COUNSEL FOR MOVANT,
NISSAN NORTH AMERICA, INC.**