

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>NISSAN NORTH AMERICA,<br>INC. ODOMETER LITIGATION | MDL DOCKET NO. 1921 |

### NISSAN NORTH AMERICA, INC.'S REPLY TO RESPONSE OF PLAINTIFF REBECCA WOMACK TO NNA'S MOTION TO TRANSFER AND CONSOLIDATE AND RESPONSE TO CORRESPONDING CROSS MOTION TO TRANSFER AND CONSOLIDATE

Nissan North America, Inc. ("NNA") submits this reply memorandum in further support of its Motion to Transfer and Consolidate, and in response to plaintiff Rebecca Womack's Cross Motion to Transfer and Consolidate this litigation in the Eastern District of Texas.

1

I.  **INTRODUCTION**

All responding parties agree that the five pending actions should be transferred and consolidated pursuant to 28 U.S.C. §1407(a). All responding parties, with one exception, agree that it would be appropriate to consolidate the actions in the Middle District of Tennessee, a centrally located venue with favorable docket conditions, and where requested discovery documents are located. For the following reasons, as well as for the reasons set forth in NNA's Motion to Transfer and Consolidate, these actions are properly transferred and consolidated in the Middle District of Tennessee.

II. **THE EASTERN DISTRICT OF TEXAS IS NOT THE CENTER OF GRAVITY FOR ODOMETER ACT LITIGATION**

Womack asserts that transfer and consolidation in the Eastern District of Texas is warranted almost exclusively because Judge Ward presided over a case against Honda under the Odometer Act, and Judge Folsom was assigned one of the five pending federal cases against NNA. However, these tenuous connections simply do not amount to a "center of gravity" or make the Eastern District a "focal point" in the manner contemplated by this Panel.

As federal courts have made clear, the "center of gravity" inquiry is focused on where the conduct complained of occurred, where the witnesses and documents are located, and where the majority of discovery is likely to take place. *See e.g., In Re Washington Public Power Supply Sys. Secs. Lit.*, 568 F.Supp. 1250, 1251-52 (J.P.M.L. 1983) (the state of Washington was the "center of gravity" of the litigation and the "focal point" for discovery because defendant had its headquarters there, construction sites for the Nuclear Projects were located there, and numerous relevant acts and transactions occurred in the state); *In re Multidistrict Litig. Involving Banking*

2

*Agreements with Stirling Homex Corp.*, 388 F.Supp. 572, 573 (J.P.M.L 1975) (Southern District of New York was the focal point because negotiations took place in the district and the majority of the documents and witnesses were located within the district); *In re Natural Resources Fund, Inc. Secs. Lit.*, 372 F.Supp. 1403, 1404-05 (J.P.M.L. 1974) (District of Kansas was the center of gravity of the litigation because related bankruptcy proceedings, documents, and witnesses were located there); *In Re Motor Vehicle Air Pollution Equipment Lit.*, 311 F.Supp. 1349, 1351 (J.P.M.L. 1970) (center of gravity was where documents relevant to the litigation were located, and where alleged conspiratorial meetings occurred).

Womack's reliance on the unrelated Honda litigation brought by different plaintiffs before Judge Ward does not make the Eastern District of Texas a focal point for Womack's claims against Nissan. None of the named plaintiffs or defendants in this case was a party to the Honda litigation, and it did not concern Nissan or Infiniti vehicles. Further, Judge Ward's personal familiarity with the Federal Odometer Act has no bearing on the analysis here.

The only real connection this litigation has to the Eastern District of Texas is that it is one of five districts in which NNA has been sued. The fact that Judge Folsom has addressed at the pleading stage the single statutory claim alleged by plaintiff Womack, prior to the Supreme Court's new guidance on pleading requirements in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), or that he has denied without prejudice[1] a jurisdictional challenge until discovery

---

[1] Judge Folsom did not make any substantive ruling on whether Nissan Motor Co., Ltd. was subject to jurisdiction in Texas. Rather, he simply denied the Motion to Dismiss without prejudice and permitted Womack the opportunity to conduct limited jurisdictional discovery within a certain amount of time after which it was contemplated that NML could reassert its jurisdictional challenge.

could be conducted, does not transform the Eastern District of Texas into the focal point of the litigation. There are no allegations that the vehicle odometers were designed, tested or manufactured in Texas. Likewise, there are no allegations that any documents, or any witnesses with knowledge of relevant facts, other than Womack herself, are to be found in the Eastern District of Texas. Accordingly, the Eastern District of Texas is not the focal point or center of gravity for odometer litigation.

### III. THE EASTERN DISTRICT OF TEXAS IS NOT AN APPROPRIATE TRANSFEREE FORUM

Factors that this Panel takes into consideration in determining a suitable transferee venue do not support transfer and consolidation of these actions in the Eastern District of Texas.

#### A. The Marshall Division of the Eastern District of Texas is Not Centrally Located, Nor Convenient for the Parties and Witnesses

Womack contends that transfer to the Eastern District of Texas is appropriate because it is "centrally and conveniently located." (Resp. pg. 6). The *Womack* action is venued in the Marshall Division of the Eastern District of Texas. It is hard to imagine that the Eastern District of Texas is a convenient forum when Marshall, Texas has no major domestic or international airport, and the nearest major international airport directly reachable from most parts of the United States is Dallas-Fort Worth International Airport – 180 miles away. It is further just as hard to imagine how Marshall, Texas can be claimed to be "centrally located" geographically given the dispersal of these five actions.

### B. Caseload Conditions in the Eastern District of Texas Do Not Support Transfer to That District

In selecting a forum for an MDL proceeding, this panel considers the caseload conditions in the proposed transferee district. See *In re Laughlin Prods., Inc. Patent Lit.*, 240 F. Supp. 2d. 1358, 1359 (J.P.M.L. 2003) (transfer to the Eastern District of Pennsylvania based in part on fact that the district "enjoys general caseload conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote the time to pretrial matters"). This criterion further undermines Womack's argument in favor of the Eastern District of Texas. Indeed, a decision by this Panel on January 10, 2007 confirms that the docket conditions in the Eastern District of Texas do not support transfer of an MDL proceeding to that district. In *In re Merscorp Inc. Real Estate Settlement Procedures Act (RESPA) Lit.*, 473 F.Supp.2d 1379 (J.P.M.L. 2007), this Panel determined that transfer and coordination was proper for eight actions, two of which were pending in the Eastern District of Texas. The parties stipulated to an MDL venue in the Eastern District of Texas, but that court declined the assignment due to its heavy caseload. *Id.* at 1379-80. The Judge to whom the two actions in the Eastern District of Texas were assigned was Judge Folsom, to whom the *Womack* matter is assigned. Additionally, it does not appear that an MDL proceeding has been consolidated in the Eastern District of Texas since this Panel's order in *In Merscorp Inc. Real Estate Settlement Procedures Act (RESPA) Lit.*

## V. THE MIDDLE DISTRICT OF TENNESSEE IS AN APPROPRIATE FORUM FOR HOLDING PRETRIAL PROCEEDINGS OF THESE ACTIONS UNDER 28 U.S.C. SECTION 1407

### A. The Preference of the Parties Supports Transfer to the Middle District of Tennessee

One of the factors the Panel takes into consideration in determining a transferee venue is the preference of the parties on where the actions should be consolidated, especially where there is unanimous or near unanimous support for a venue. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, 495 F.Supp.2d 1379 (J.P.M.L. 2007); *In re Ortho Evra Prods. Liab. Litig.*, 422 F.Supp.2d 1379 (J.P.M.L. 2006); *In re Honda Motor Co. Oil Filter Prods. Liab. Litig.*, 416 F.Supp.2d. 1368 (J.P.M.L. 2006). The response by Plaintiffs Hidalgo, Shaffer and Selth to NNA's Motion to Transfer and Consolidate confirm their support for transfer and consolidation of these actions in the Middle District of Tennessee. Accordingly, all parties, except Womack, support transfer and consolidation in the Middle District of Tennessee and agree that it is a suitable transferee venue.[2]

### B. Documents Requested in Discovery Will be Located in Tennessee

While Womack claims that discovery documents will be "spread literally from coast to coast" within North America, the documents sought from NNA will be located in Tennessee and/or Michigan. Preliminary written discovery as well requested jurisdictional discovery in the Womack action have made it clear that a significant amount of the discovery that will be produced by NNA are found in Tennessee, where NNA's corporate headquarters are located.

---

[2] Plaintiff *Anadu* did not respond to NNA's Motion, however, this is not surprising as no defendants have been served in the *Anadu* action and the case has been inactive since its filing.

Moreover, to the extent discovery relates to odometer system design, there would also be documents and witnesses at Nissan Technical Center North America, Inc. (NTCNA), a subsidiary of NNA, which is located in Michigan. The Panel has consistently found that the location of the documents and witnesses weighs in favor of a venue where such are found. *See, e.g., In re McDonald's French Fries Litig.*, 444 F.Supp.2d 1354 (J.P.M.L. 2006); *In re SFBC Intern. Securities & Derivative Litig.*, 435 F.Supp.2d 1355, 1356 (J.P.M.L. 2006).

### C. The Middle District of Tennessee Offers Favorable Docket Conditions and Is a Centrally Located, Convenient Venue

While the Eastern District of Texas recently declined an MDL assignment, the Middle District of Tennessee offers a well-managed docket undertaxed by multidistrict litigation. *See In re Aredia & Zometa Prods. Liab. Litig.*, 429 F.Supp.2d 1371, 1373 (J.P.M.L. 2006) (recognizing that the Middle District of Tennessee was "currently handling few other multidistrict litigation dockets"). As of November 6, 2007, the Middle District of Tennessee had two pending MDL proceedings and four active judges.

Additionally, it truly is a convenient forum with the Nashville International Airport less than 10 miles away from the District Courthouse. Further, Nashville, Tennessee (where the Middle District of Tennessee sits) is centrally located geographically among the five constituent actions. In situations where constituent actions are geographically dispersed, the Panel often considers a centrally located district when selecting a transferor venue. *See In re Ortho Evra Prods. Liab. Litig.*, 422 F.Supp.2d 1379 (J.P.M.L. 2006); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F.Supp.2d 1371, 1372 (J.P.M.L. 2005).

7

## VI. CONCLUSION

In sum, the parties all agree consolidation is appropriate and necessary. Additionally, all parties, except Womack, agree consolidation and transfer is appropriate in the Middle District of Tennessee. As the factors this Panel considers in selecting a transferor venue support transfer and consolidation in that District, NNA respectfully requests that the Panel enter an order transferring the actions listed in Schedule A of NNA's motion to the Middle District of Tennessee for consolidated pretrial proceedings.

Dated: January 10, 2008

Respectfully submitted,

_____
E. Paul Cauley, Jr.
SEDGWICK, DETERT, MORAN & ARNOLD LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: (469) 227-8200
Facsimile: (469) 227-8004
**COUNSEL FOR MOVANT,
NISSAN NORTH AMERICA, INC.**